KATHERINE PALLADINO v. LATINA M. NARDI

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 15814
AT WATERBURY

Memorandum filed July 26, 1946.

*William K. Lawlor,* of Waterbury, for the Plaintiff.

*Yale Matzkin* and *Howard Matzkin*, of Waterbury, for the Defendant.

ALCORN, J. The plaintiff and her husband have been married about twenty-five years. The husband is forty-five years old, and is an unskilled laborer earning $30 per week. They have a twenty-three year old son and two younger daughters. Another child was born in 1938 and died. In 1939 the plaintiff had two miscarriages.

The defendant, whose maiden name was Nardi, was divorced from her husband, whose name was Grosso, in June, 1939. She is employed in a store.

The plaintiff and her husband lived happily together without rupture of their domestic life until November, 1938, when the plaintiff first noticed a change in his attitude. Investigation disclosed that he was seeing the defendant, who was then still married. During the summer of 1939 the plaintiff and others saw the plaintiff's husband, more than once, in the defendant's company. As a result of her knowledge of the situation, the plaintiff on three occasions talked to the defendant and told her in substance to leave her husband alone. Each time, the defendant denied going with the plaintiff's husband. This denial was untrue and thereafter the defendant continued to see the plaintiff's husband.

The plaintiff several times talked to her husband about the affair and he admitted it but said that he wanted to break it off in his own way. Instead of terminating the association, however, the plaintiff's husband left home in February, 1940, went to live at a friend's apartment, and continued to see the defendant. He failed to support his family and in 1941 was arrested for nonsupport and ordered to pay $12 per week. About August, 1941, he went to live with defendant and her mother. The mother died in October, 1941, and he continued to live with the defendant. In October, 1942, the defendant bought and moved to her present home and the plaintiff's husband moved there too. In 1942 he decided to sever his marital ties and commenced a divorce action against the plaintiff on the ground of intolerable cruelty to which she filed a cross-complaint alleging intolerable cruelty since 1939. He had reported to his selective service board that he was supporting his family when such was not the case, and as a result he was inducted into the armed forces in November, 1942. Before leaving, he

came home to say good-bye to his children but ignored the plaintiff. He was in the service until February 23, 1945. While he was in the service the plaintiff received allotment checks as his wife but he did not communicate with her.

Upon his discharge, he returned to the defendant's house to live and is still living there. After his discharge the plaintiff asked him to return home, as she had done several times before, and his son also tried without success to have him return. By this time he was using endearing terms to the defendant in the presence of his son's wife, the defendant had his picture, affectionately inscribed, on display in the house, and they exchanged gifts.

Until the separation, the plaintiff's husband never denied his family anything he could provide and furnished $25 weekly for household expenses. The plaintiff still has affection for him and would, even now, take him back if he would return. As a result of her husband's conduct with the defendant, the plaintiff has become very nervous and is suffering from a duodenal ulcer due to the strain and tension she is under. Her physician has been treating her weekly for at least two years because of her condition.

The defense, in which plaintiff's husband participated, is that the defendant did nothing to alienate his affections, that his affection for his wife was gone when the defendant came on the scene, and that he is merely a boarder at defendant's home for want of other place to stay. The plaintiff's husband described affairs in which he claimed to have been involved with women in Worcester, Albany, and Stamford, the last resulting in a 1926 arrest in a hotel. None of the events were of recent date and they lose force in the light of the birth of a child to the plaintiff in 1938 and her two miscarriages in 1939. It would have been more seemly had he shown an inclination to take pride in the more recent estimate placed upon him as a good and affectionate husband by his family doctor, his wife, and other witnesses whose testimony the court can credit.

After several talks between the plaintiff and defendant, there can be no doubt of the latter's knowledge that continued association with the plaintiff's husband was doing or was likely to do a wrong to the plaintiff. In spite of that, however, she not only continued that association but intentionally increased it and took him into her home to live. Under such circum-

stances the plaintiff is entitled to recover. *Reynolds* v. *Vroom,* 132 Conn. 53, 55; *Maggay* v. *Nikitko,* 117 Conn. 206, 209.

Even if, as the defendant contended, no affection existed at the time her wrongful acts were committed, still she would not be relieved of responsibility. The law presumes that there is always a possibility of a husband and wife becoming reconciled even though a separation has occurred before the alienation takes place. An unsatisfactory domestic relationship is material only in mitigation of damages. *Amellin* v. *Leone,* 114 Conn. 478, 480. In this case, however, the court is satisfied that the separation occurred as a result of the defendant's association with the plaintiff's husband.

The complaint alleges that the plaintiff was living happily with her husband in 1942 and that the alienation occurred in that year. The evidence, as already indicated, discloses that the plaintiff's husband left her in 1940 and thereafter lived elsewhere. The progress of the defendant's acts covered a period of time marked first by the 1940 separation and coming to a head in the divorce action commenced in 1942. The variance between pleading and proof is immaterial, does not mislead the defendant, and is; therefore, to be wholly disregarded. *Rose* v. *Van Bosch,* 119 Conn. 514, 518.

The plaintiff claims to have been damaged to the extent of $5000. Upon all the circumstances established by the evidence the court is satisfied that an award in that amount is reasonable *Valentine* v. *Pollak,* 95 Conn. 556, 558.

Judgment may enter that the plaintiff recover of the defendant Five Thousand (5000) Dollars damages.